## *In re* WINONA BRIDGE RY. CO.

SAMUEL W. HAMILTON *vs.* WINONA BRIDGE RY. Co. *et al.*

| 51 | 97 |
|----|----|
| 83 | 358 |

Argued June 29, 1892. Decided Aug. 29, 1892.

**Administrator's Sale—Bond.**

A provision in an order of license to administrators to sell real estate to pay debts required them to execute a sale bond in a specific sum. After the appraisal, and before sale, the probate court approved a satisfactory bond in a less amount. *Held*, that the variance was not fatal to the validity of the sale.

**Notice of Sale—Description of Property.**

Where the license authorized the lands of a deceased debtor to be sold at private sale by administrators, and among other real property in the county to be sold was the homestead of the deceased, in which his widow was entitled to a life estate, designated as a certain government lot, *held*, that the notice of sale, referring to the government lot as a part of the real estate of which the deceased debtor died seised, and as subject to the life estate of the widow, was not void for uncertainty by reason of an omission of the number of the section in which the government lot was situated.

Appeal by Samuel W. Hamilton, from a judgment of the District Court of Winona County, *Start*, J., entered January 7, 1892, awarding him the sum of $3,047.41 as compensation for his land taken by the petitioner.

This was a condemnation proceeding instituted by the petitioner the Winona Bridge Railway Company, to condemn part of lot two, (2,) in section 25, township 107 north, of range 7 west, for railway and bridge purposes. Commissioners were appointed, the damages assessed, and appeals taken to the District Court. In that court, an order was made pursuant to a stipulation, that the total amount of compensation for taking the tract be found by the jury, leaving to the court to distribute such compensation among the several parties interested in the land, and to award to each his or her proper share therein. The jury assessed the total compensation at $46,-000. Of this sum $44,000 was for the land taken, and $2,000 for

v.51M.—7

damages to the rest of the tract. The court then made distribution of such compensation among the different claimants. It was admitted that Angelina E. Keyes owned a life estate in the property; M. G. Norton, W. H. Laird, H. C. Bolcom, and J. L. Norton each claimed an undivided three-sixteenths in the reversion; S. W. Hamilton and Thomas Wilson claimed to own the entire title, subject to the life estate, and admittedly owned the remaining four-sixteenths. The controversy was, first, as to the amount to be allowed Mrs. Keyes for her life estate; second, as to the title to the reversion. The court found the value of the life estate to be $22,878.67, on the basis of the present worth of an annuity of five per cent. on $46,000, the expectation of life being fourteen years. The court further found as a conclusion of law that Hamilton and Wilson had no title to the property beyond the undivided four-sixteenths, and distributed the remainder of the fund as follows: To M. G. Norton, Laird, Bolcom and J. L. Norton each three-sixteenths, and to Hamilton and Wilson four-sixteenths. The facts in relation to the controversy over the title to the reversion are set forth in full in the opinion. Judgment was entered pursuant to the findings, and Hamilton appealed. Mrs. Keyes was not made a party to the appeal.

*Lloyd W. Bowers,* for appellant.

1. The appellant was entitled to have the appeals from the commissioners' award to him tried separately from the other appeals. 1878 G. S. ch. 34, §§ 14–26, ch. 66, § 129; *Abrahams* v. *Mayor, etc., of London,* L. R. 6 Eq. 625; *Whitcher* v. *Town of Benton,* 48 N. H. 157; *Johnson* v. *Freeport & Miss. R. Ry. Co.,* 116 Ill. 521.

2. The sale bond was insufficient. The approval of it by the judge was never recorded, and hence there was no approval. *Rumrill* v. *First Nat. Bank,* 28 Minn. 202; *Balch* v. *Hooper,* 32 Minn. 158; Laws 1878, ch. 94, § 2; Laws 1870, ch. 66; Laws 1871, ch. 55, § 1. The license required a $7,000 bond. A $4,000 bond was given. The indorsement of approval on the bond cannot be held to be an order modifying the requirement in the license of a $7,000 bond. If the court had so intended, it would have made an express order of modification. The giving of a $7,000 bond was an express condition of the sale.

The approval of a bond has reference, not to the amount, but to its execution and sufficiency of the sureties; at least where the amount is fixed by statute, or order of the court. The approval of the $4,000 bond approved it for what it was, a good bond for that amount. The license fixed the amount, and provided for approval. The approval did not alter the amount, for that had been fixed. It approved the execution and sureties. The failure to give a proper bond is fatal. *Babcock* v. *Cobb*, 11 Minn. 347, (Gil. 247.) The order of confirmation did not cure the defect. That passed on nothing but the conduct of the sale and the sufficiency of the bid. *Dawson* v. *Helmes*, 30 Minn. 107; *Culver* v. *Hardenbergh*, 37 Minn. 225.

3. The notice of sale did not describe the sale with "common certainty," as required by the license and by statute, 1878 G. S. ch. 57, § 40. The description omitted to name the section. There were seventeen government lots No. 2 in Winona County. The description was, therefore, no better than none at all, and the notice was fatally defective. *Herrick* v. *Ammerman*, 32 Minn. 544; *Herrick* v. *Morrill*, 37 Minn. 250. The sale was not private, but public, or semi-public, as required by the statute. 1878 G. S. ch. 57, § 40; Laws 1881, ch. 43, § 3; *Curran* v. *Kuby*, 37 Minn. 330.

*William Gale*, for respondent Winona Bridge Railway Company.

1. The appellant was not entitled to a separate trial of the appeal from the award. The question was as to the apportionment of one fund among several claimants, and it was correct practice to determine the claims of all the parties on one trial. 1 Pomeroy, Eq. Jur., 114; *Atwater* v. *Russell*, 49 Minn. 57.

The property consisted of one tract. The statutory term "owner" includes all persons who have an interest in such tract,—all the various interests make a complete ownership. There should be but one trial for each tract. Mills, Em. Dom. §§ 65, 262; *Kohl* v. *United States*, 91 U. S. 367; *Watson* v. *Milwaukee & M. Ry. Co.*, 57 Wis. 332.

2. The petitioner emphatically objects to the consideration on this appeal of appellant's assignments of error and argument relating to the share of the fund which should be paid Mrs. Keyes.

She was not made a party to this appeal, has no opportunity to be heard, and cannot be bound by a decision of this court affecting her rights.

*Tawney, Smith & Tawney,* for respondents Nortons, Laird and Bolcom.

The appellant had no title to the tract beyond his conceded two-sixteenths interest.

1. The bond was sufficient. There is nothing in the law of this state that requires an administrator's sale bond, with the approval of the judge indorsed thereon, to be entered in the order or bond book for record, before a valid sale can be made. 1878 G. S. ch. 57, §§ 37, 51. The fact that the bond given and approved was in a less amount than was specified in the license, does not affect the validity of the sale. The statute does not require the license to fix the amount of the bond, or even to mention a bond. 1878 G. S. ch. 57, § 67. The recital of the bond and its amount in the license was mere surplusage. Fixing the amount of the bond necessarily comes after the license, and after an appraisal has been made. This was done by the approval of a bond for $4,000. 1878 G. S. ch. 57, § 37; 2 Woerner, Am. Law of Adm. 472. The sufficiency of the bond in fact is the essential feature. *Emery* v. *Vroman,* 19 Wis. 689. The evidence shows the bond was amply sufficient. The approval by the court required by the statute is an approval of the amount, as well as of the sureties. 2 Woerner, Am. Law of Adm. 1046. Such approval cures any defects or informalities. *Clarke* v. *Chapin,* 7 Allen, 425. The confirmation of the sale also cured the alleged informality in the bond. *Johnson* v. *Clark,* 18 Kan. 157; *Camden* v. *Plain,* 91 Mo. 117, 128. This is not a direct proceeding to set aside the sale, but simply a collateral attack.

2. The notice of sale was sufficient. This was a private sale under the statute, and required merely "such notice of the terms of the sale as the court may direct." 1878 G. S. ch. 57, § 51, subdiv. 4, § 40. The land is described with common certainty. The section is omitted, but the notice says "real estate of which the deceased died seised" and to be sold "subject to the life estate of An-

geline E. Keyes, widow of said deceased." John Keyes owned no other lot No. 2 in said township, and Mrs. Keyes had filed a written selection of this tract as her homestead, and claimed no life estate in any other lot No. 2. This description could not have misled bidders, and was sufficient to put a man of ordinary prudence upon inquiry, and was, therefore, sufficient. 2 Woerner, Am. Law of Adm. 1052, 4053; *Succession of Wadsworth*, 2 La. An. 966; *Wylly* v. *Gazan*, 69 Ga. 506. The sale having been confirmed, it cannot be attacked in this collateral proceeding. *Johnson* v. *Clark*, 18 Kan. 157; *Osman* v. *Traphagen*, 23 Mich. 80; *Camden* v. *Plain*, 91 Mo. 117.

VANDERBURGH, J. Certain premises described in the record were appropriated in condemnation proceedings by the defendant bridge company, and the amount of damages assessed therein has been deposited, in pursuance of the order of the court, with the clerk of the district court of Winona county, to await the determination of the rights of the several claimants. The land in controversy, a portion of which was condemned, is known and designated as lot 2, in section 25, township 107, range 7, in Winona county, and was the homestead of John Keyes, owned and occupied by him and his family as such at the time of his death, December 2, 1876. He left him surviving his widow Angeline E. Keyes, and several children, his sole heirs at law. His widow claimed and was allowed a life estate in the homestead premises, which she continued to occupy to the time of the condemnation proceedings. After the death of John Keyes, proceedings were taken in the probate court of Winona county for the sale of the government lot 2 in question, with other lands at private sale, subject to the life estate of the widow, and the administrators were on the 10th day of August, 1878, duly licensed by the probate court to sell the same at private sale. The administrators gave a bond upon the sale, which was duly approved by the court, and took the oath required, which was reduced to writing in due form, and filed. Notice of the sale was given by the administrators, and due publication thereof had. In pursuance of the notice, the

administrators sold the lot 2 referred to, subject to the life estate of the widow, to one Herman Wenke; and upon the decease of the latter his heirs conveyed all the right, title, and interest acquired by him upon such administrators' sale to defendants Henry C. Bolcom, William H. Laird, Matthew G. Norton, and James L. Norton in the proportion of three-sixteenths each, and to Thomas Wilson and Samuel W. Hamilton in the proportion of two-sixteenths each.

The principal question fairly presented by the record upon this appeal is whether the proceedings upon the sale of the reversionary interest of the heirs in lot 2 by the administrators were valid, so as to pass the title to Herman Wenke, as found by the trial court.

The first defect complained of is the insufficiency of the administrators' bond upon the sale. It was necessary that a sale bond approved by the court should be given. 1878 G. S. ch. 57, §§ 37, 40, 51.

In the order of license made by the probate court, August 10, 1878, the court directed that before making sale of said real estate, or any part thereof, the administrators should give bond to the judge of the probate court, "in the sum of seven thousand dollars, with sufficient sureties to be approved by the judge." The bond was, however, subsequently executed in the penal sum of four instead of seven thousand dollars, with sufficient sureties, but it was approved by the judge as follows, on the day of its execution: "I do hereby approve the within bond." There is no question but that the bond was satisfactory and sufficient. When it was executed an appraisal had been made which showed the value of the property to be less than $3,000. It was not necessary to the validity of the proceedings that the license should have specified the amount of the security, and the fact did not conclude the judge from changing the amount or approving a bond in a different sum. The bond as approved was in compliance with the statute. The bond having been duly accepted, approved, and deposited with the judge of probate, the duty of the administrators in respect to the same was performed, and the subsequent failure of the judge to record the same did not invalidate the proceedings, or subject them to collateral attack.

2. The next objection urged by the appellant against the validity of the proceedings is the alleged defective description of the property in the notice of sale, which was as follows:

"Notice is hereby given that pursuant to and by virtue of a license to the undersigned, administrators of the estate of John Keyes, deceased, granted on the 10th day of August, A. D. 1878, by the judge of probate in and for the county of Winona, in the state of Minnesota, to sell at private sale all the real estate of which said deceased died seised, we shall offer for sale and shall sell at private sale, at any time subsequent to September 28, A. D. 1878, and prior to August 10, 1879, the following pieces and parcels of land, situated in said county, to wit:   *   *   *   Lot No. two, (2,) in township No. one hundred and seven, (107,) range No. seven, (7,) subject to the life estate of Angeline E. Keyes, widow of said deceased.   *   *   *

"Said lands will be sold for such price as may be agreed upon, not less than the value thereof as appraised, subject to all incumbrances thereon, by mortgage or otherwise, now existing, and the terms of sale will be either all cash or one half cash, and the balance on one year's time, secured by mortgage on the land.

"Winona, Minn., August 22, 1878."

It will be observed that the section (25) is omitted in the notice, and it is claimed to be void for uncertainty. The original notice also contained other lands in Winona county of which John Keyes died seised.

It will also be observed that the sale was to be private at any time between September 28, 1878, and August 10, 1879. This gave ample time for investigation and inquiry in respect to the lands of John Keyes authorized to be sold, and the notice would be construed to be limited to the lands of John Keyes situated in Winona county. The notice shows that the lands to be sold belonged to the estate of John Keyes. Government lot 2, owned by him, was embraced therein, and was a part of the lands advertised to be sold, and the description was further limited and defined by the reference to the fact that the lot in question was subject to the life estate therein of Angeline E. Keyes. There can be no presumption that there was more than one parcel of that description belonging to John Keyes in

Winona county. The notice and description were sufficient to enable purchasers and all persons interested to understand what property was referred to and intended to be sold. The sale was duly reported to the court, and confirmed, and the administrators executed deeds to the purchaser under the direction of the court, and they are found to have purchased the property in good faith.

We think the description was sufficient for the purposes of a private sale, at least, and the sale was not void by reason of the defect.

Upon the appeal from the award of the commissioners, all the parties joined in a stipulation for the trial of all questions embraced in the appeal by the court, without a jury, except the question of the total compensation to be paid by the petitioner, and that the verdict of the jury upon the question of total compensation should be treated as a special verdict, leaving the question of the distribution thereof to be determined by the court. The parties to the appeal, as has already appeared, claimed undivided interests in the land subject to the life estate of Mrs. Keyes, except that the appellants here claim to be the sole owners, share and share alike, to the exclusion of the respondents, other than the petitioner, the corporation. At the trial upon the appeal all the appellants were required to join, and the appellants Hamilton and Wilson, who united in their appeal, excepted to such ruling, and were denied a separate trial, but were separately allowed the usual number of challenges, and full opportunity to submit their evidence on the question of damages in connection with that of the other appellants, all of which evidence must be deemed to have been relevant and material. Under the stipulation referred to, the course adopted by the court seems to us to have been eminently proper, and the procedure is to be approved. There was certainly no prejudicial error therein. Since the life tenant, Mrs. Keyes, is not a party to this appeal, there are no other assignments of error which it is necessary to consider.

Judgment affirmed.

MITCHELL, J., took no part.

(Opinion published 52 N. W. Rep. 1079.)